THE STATE, EX REL. EDWARDS, *v.* BOARD OF COUNTY
COMMISSIONERS OF CLERMONT COUNTY.

[Cite as State, ex rel. Edwards, v. Board of County Commrs.,
4 Ohio Misc. 221.]

(No. 34112—Decided November 5, 1965.)

ACTION FOR INJUNCTION: Court of Common Pleas of Clermont County.

*Mr. Thomas A. Zins,* for plaintiff.
*Mr. Robert A. Jones,* prosecuting attorney, and Messrs. *Nichols, Speidel & Nichols,* for bond purchasers.

NICHOLS, J.   This case is one to enjoin the County Commissioners of Clermont County, Ohio, from taking further steps to issue $3,115,000 worth of refunding bonds, which are revenue bonds secured by the revenues derived from the waterworks system of the Miami-Goshen-Stonelick Subdistrict of the Clermont County sewer district and the proceeds of the refunding bonds are to be used to retire the existing bonds from the same district.   The matter was presented to the court on stipulation of facts which included primarily, records of the Cler-

mont County Commissioners office. These facts show that in September, 1959, the board of county commissioners authorized the issuance of waterworks revenue bonds of the district in the amount of $2,885,000. The record discloses further that on December 21, 1964, additional revenue bonds were issued from the same subdistrict in the amount of $310,000, or a total of $3,195,000. Evidence shows further that on July 2, 1965, the Board of Clermont County Commissioners passed a resolution authorizing the issuance of $3,115,000 worth of refunding bonds and included in that resolution is the authorization to retire the $310,000 issue for an agreed price of $294,500. The fact that the holders of these bonds will surrender them for that amount has been stipulated by the parties. The resolution provides further that arrangements were to be made to call the balance of the bonds outstanding from the September 1959 issue at the first callable date, namely, October 1, 1969. The plan suggested is that either the commissioners or the trustee purchase sufficient government bonds that will have an actual face value including call premium and maturing on October 1, 1969, of $2,801,600, which will be the amount of outstanding bonds from the 1959 issue at that time. The plaintiff asked for injunction against the procedure under these lines. Section 133.06 of the Revised Code is the authority for the county to issue revenue bonds over the normal limit of bonded indebtedness of the county. The section, among other things, provides that "Such bonds may be made callable, and if so issued may be refunded." While this is a brief statement, it is quite comprehensive and inasmuch as the original issue of 1959 is callable, the court holds definitely that the bonds may be refunded.

The next question coming before the court is whether Section 133.061 of the Revised Code limits the refunding of any of these bonds. These two statutes disclose that they were both enacted to become effective on September 25, 1961, while Section 133.06 was in existence prior to that time and only was re-enacted to be effective as of that date; nevertheless, these two sections must be read together. It is the court's interpretation of Section 133.061 that it does not limit the general terms of Section 133.06 in regard to refunding these bonds but merely states that in the event the original bonds were in default, then, in that event, the refunding bonds must be restricted, partic-

ularly as to the final date of maturity. Otherwise, the refunding provision of Section 133.06 has not been otherwise changed by Section 133.061.

The next question coming before the court is whether bonds can be refunded in advance of their earliest call date. There is no restriction in Section 133.06 about the time or terms of the redemption bonds and in order for a county to take advantage of the provisions for refunding, it would, of necessity, mean that they must plan in advance for such refunding. This particular plan called for a refunding as of approximately four years before the first callable date of the 1959 bonds. The court feels and holds that the board of county commissioners has a rather wide discretion as to the time and conditions for issuing refunding bonds and further finds as long as the board does not abuse its reasonable discretion, that their actions certainly would be and are legal. In this particular case, the commissioners have several advantages for issuing the refunding bonds. First, and primarily, they have an opportunity, at the present time of the market in respect to monies and interest rates, to obtain a very substantial lessening of the total amount of interest that they will have to pay over the lifetime of these refunding bonds as compared with the lifetime of the original 1959 bonds. The actual savings of interest in accordance with the established proof in this case is $523,262.50. However, this must be reduced by the premium that they will have to pay to call the original bonds, which premium amounts to $81,600. This leaves a net savings in interest to the county or to the waterworks system, of $441,662.50. In addition to this and in accordance with the resolution of July 2, 1965, they are to have the privilege of having cancelled the $310,000 issue of December 1964, for the sum of $294,500; thus making another substantial saving to the county and the waterworks system. There is another provision in the resolution of July 2, 1965, which will be beneficial to the waterworks system and that is the provision that they may issue $40,000 of bonds for expansion of the waterworks system and an additional $100,000 for the expansion of the water treatment facilities at the same interest rate as is provided for in the new refunding issue. They would not be able to do this under the old issue as that would necessitate

their issuing these bonds of a lower priority and that would mean the payment of higher interest.

For these reasons, the court feels that the commissioners did act within their sound discretion and so finds.

The question is raised as to whether the proceeds of the revenue bonds or the bonds to refund revenue bonds are subject to the provision of Chapter 135 of the Revised Code. This Chapter in substance provides methods by which a county treasurer may deposit the various county funds, and while these funds are public funds, Section 133.06 provides specifically that the commissioners shall execute the necessary documents to provide for the pledge, protection, disposition of the revenues from which the bonds are paid. In this instance, these revenues are those received from the waterworks system and the board of commissioners under their resolution of July 2, 1965, has provided this by setting up a trustee to handle the funds. We believe that this section in respect to revenue bonds supersedes the general section of the depository section and that section is not applicable to the funds for revenue bonds and that the commissioners were within their statutory authority in setting up a trustee to handle these funds.

There is a question raised in the resolution about the county commissioners purchasing treasury bonds so that the funds might be available to retire these bonds on October 1, 1969.

The court finds that there is no statutory authority for the county commissioners to invest the proceeds of the sale of these bonds in the type of securities set out and contemplated under Section V of their resolution of July 2, 1965; however, under such section, the county is authorized, after the payment of the sum of $294,500, to acquire for cancellations the outstanding bonds issued under their resolution of December 21, 1964, to the trustee created by the July 2, 1965 resolution.

It is therefore authorized to turn over the entire balance of such funds to the trustee upon the assurance of the trustee that such funds would be invested in United States Treasury bonds that will have a cash value, as of the first day of October 1969, a sum not less than $2,801,600.

The question could be raised likewise as to whether the trustee has power to purchase the bonds as contemplated in

the resolution of July 2, 1965. The court does feel that it has the inherent power to do this and so long as their investments comply with the provisions of Section 2109.37 of the Revised Code, which is the general section for investment of funds of a fiduciary, and that it further complies with the provisions of the bonding resolution, that they are well within their authority so to do.

The court therefore holds that while there might be a question as to the right of the commissioners themselves to purchase these bonds, there is no question that the trustee has that right and inasmuch as the resolution provides that the county commissioners after the retirement of $310,000 worth of bonds to turn the cash over to the trustee, the court feels that this is proper and legal. The court feels that the entire transaction is legal and proper.

The court feels that the principal and call premium on the outstanding callable bonds will thereby be fully provided for by maturing principal of said United States Treasury Bonds, as of October 1, 1969. The interest on the refunding bonds until such date should also come from as definite a source. The July 2, 1965, bond resolution and the arithmetic of the situation indicate that there is a potential interest deficit until October 1, 1969, between the interest income of the Treasury Bonds and the (greater) interest requirements of the refunding bonds.

The court suggests that the *income,* but not the corpus, from a sufficient amount of bond account assets for the 1959 bonds can be used for this purpose, since the resolution for the 1959 bonds does not require otherwise and for the further reason that said bonds, to the extent of $2,720,000, will have been called for redemption and principal funds therefor fully provided for from the proceeds of sale of the new refunding bonds.

*Judgment accordingly.*